**Affirmed and Memorandum Opinion filed April 17, 2012**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

_____

## NO. 14-11-00162-CV
_____

**CONTINENTAL CARBON COMPANY, Appellant,**

**V.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
Appellee.**

---

**On Appeal from the 333rd District Court
Harris County
Trial Court Cause No. 2010-44411**

---

## MEMORANDUM OPINION

This is an appeal from a final judgment confirming an arbitration award. In one issue, the appellant, Continental Carbon Company, contends the trial court erred in confirming the award because the arbitrators exceeded the limited authority granted to them under the arbitration provision in the parties' contract. We affirm.

I

Continental operates carbon-black manufacturing plants in the United States. Carbon black is used in tires as well as other rubber and plastic items. National Union Fire Insurance Company of Pittsburgh issued Continental an umbrella policy for the period of July 30, 2001, to July 30, 2002.

In 2001, the Action Marine boat dealership, several individual persons, and the City of Columbus, Georgia, sued Continental in an Alabama federal court. The Action Marine plaintiffs alleged they had been exposed to pollution in the form of carbon-black dust or particulates discharged by Continental during the production process at its plant in Alabama, and these "fugitive emissions" landed on their homes, boats, and cars, resulting in property damage and other losses. In 2005, the Action Marine plaintiffs recovered a multimillion-dollar judgment that was affirmed on appeal.

After the Action Marine plaintiffs filed suit, Continental put National Union on notice that its umbrella policy might be triggered. Relevant here, Endorsement 12 of National Union's policy contains a pollution exclusion. Endorsement 12 provides in material part:

> This insurance does not apply to:
>
> 1. **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world ….[1]

Endorsement 12 also contains an exception to the pollution exclusion for the "Products – Completed Operations Hazard" or PCOH. The policy defines the PCOH in part as follows:

---

[1] Defined terms are in bold in the policy.

2

**Products-Completed Operations Hazard** includes all **Bodily Injury and Property Damage** occurring away from premises you own or rent and arising out of **Your Product** . . . except:

> a. products that are still in your physical possession ….

"Your Product" is defined to include:

> 1.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

> a. you ….

If the parties disagree about the interpretation of Endorsement 12, the policy calls for the disagreement to be arbitrated as follows:

> It is further agreed that in the event of a disagreement as to the interpretation of this endorsement, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators. Within thirty (30) days of a written request for arbitration by either you or us, each party will choose an arbitrator. If the two arbitrators are unable to agree within one month upon the third arbitrator, such arbitrator shall at the request of either party be selected by the American Arbitration Association in accordance with its rules and procedures.

> The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the third arbitrator. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles ….

National Union denied coverage and Continental demanded arbitration. The arbitration took place April 13–15, 2010, before a panel of three arbitrators in Houston. Continental and National Union's primary disagreement concerned the meaning of the terms "Your Product" and "physical possession" as used in the PCOH exception. Continental argued that the carbon black alleged to have caused the Action Marine plaintiffs' damages was its product and that it was not in Continental's physical possession after it was discharged from Continental's plant. National Union contended that the "fugitive emissions" of carbon-black dust and particulates did not constitute Continental's completed or finished product as

3

contemplated in the PCOH exception and any losses Continental suffered arose from carbon black in its possession.

The arbitration panel issued its award on June 3, 2010. A majority of the panel agreed with National Union's interpretation of the policy, determining that for purposes of the PCOH exception: (1) a "product" is "the thing that a manufacturer produces for sale [but not items] that are in the process being manufactured and are not yet ready for sale;" and (2) the contested fugitive emissions fell within the "physical possession" limitation.

About a month later, on July 2, Continental filed a coverage action against National Union in an Oklahoma federal court. Contemporaneously, on July 4, National Union filed an action in the Southern District of Texas, Houston Division, seeking a declaratory judgment that it did not have any duty to defend or indemnify Continental for "fugitive emissions" lawsuits. National Union moved to dismiss Continental's coverage action in Oklahoma. It argued that the parties had entered into a tolling agreement providing that no coverage action could be filed "until 30 days after the final decision of the arbitration panel," which was July 3, 2010—one day after Continental filed its coverage action—and therefore Continental breached the parties' tolling agreement.

Meanwhile, on July 19 National Union filed a petition to confirm the arbitration award in the trial court below. On August 16, Continental filed a motion to vacate the arbitration award in the Oklahoma federal court. Continental also filed a motion to stay proceedings in the trial court pending the Oklahoma court's ruling, and attached a copy of the motion to vacate it filed in the Oklahoma court.

National Union moved to confirm the award in the trial court on September 24. In October, the Oklahoma court granted National Union's motion to dismiss Continental's coverage action without prejudice. At the same time, it dismissed as moot Continental's motion to vacate the arbitration award. In a separate order in

4

response to Continental's motion to alter or amend the judgment, the Oklahoma court ruled that Continental's coverage action did not amount to a request to vacate the award; therefore, even if the court had not dismissed the case, it would have dismissed the motion to vacate because that issue was not properly before it.

Continental filed its motion to vacate the arbitration award in the trial court on November 5, 2010, five months after the panel delivered award. After a hearing and additional briefing, the trial court rendered final judgment confirming the arbitration award on January 31, 2011. The trial court's judgment did not specify the basis for its ruling.

## II

On appeal, Continental argues that the arbitrators exceeded their authority and therefore the award must be vacated under the Federal Arbitration Act. *See* 9 U.S.C. § 10(a)(4). National Union contends, however, that we need not reach this issue because Continental failed to challenge or brief an independent basis for affirming the trial court's judgment—namely, National Union's contention below that Continental's motion to vacate was barred by limitations because it was filed after the FAA's three-month deadline for filing notice of a motion to vacate. *See* 9 U.S.C. § 12.

## A

Under the FAA, if parties have agreed to binding arbitration and to rendition of judgment by a court upon the arbitration award, then at any time within one year after the award is made, any party to the arbitration may apply to the appropriate court for an order confirming the award. 9 U.S.C. § 9. Upon such an application, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." *Id.* When National Union moved for confirmation of the award, Continental responded with a request

to vacate it. National Union replied that the trial court could not consider Continental's request because Continental had waited too long to move for vacatur. *See id.* § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."). Continental then filed a surreply in which it argued that its motion was not time-barred. The trial court granted National Union's motion to confirm the award and denied all other relief, which included Continental's motion to vacate the award.

Continental's appeal to this court presents a single appellate issue challenging both the trial court's grant of National Union's motion to confirm and the trial court's denial of Continental's motion to vacate the award. In its original brief, however, Continental reurges only its motion to vacate; it does not address all of the trial court's possible grounds for denying Continental's motion and granting National Union's motion to confirm the arbitration award. The trial court could have denied the motion to vacate because it was served more than three months after the arbitration award was filed or delivered and, having done so, could have granted the motion to confirm under section 9 of the FAA.

Continental did not address any of these grounds in its original brief. When National Union pointed out in its own brief that Continental had failed to address the timeliness of the motion to vacate, Continental filed a motion asking us to treat its reply brief as a supplement to its original brief or, alternatively, to amend its original brief. We denied the motion. *See Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998) (stating that courts of appeals have discretion in deciding whether to allow a party to amend or supplement an appellate brief).

B

Generally, an appellant must attack all independent bases or grounds that support an adverse ruling. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676,

6

681 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Fox v. Maguire*, 224 S.W.3d 304, 307 (Tex. App.—El Paso 2005, pet. denied). If the appellant fails to do so, then we must affirm. *See Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 719–20 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Britton*, 95 S.W.3d at 681; *Inscore v. Karnes Cnty. Sav. & Loan Ass'n*, 787 S.W.2d 183, 184 (Tex. App.—Corpus Christi 1990, no writ). The Supreme Court of Texas has repeatedly instructed that "the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error." *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex. 1993). Further, "grounds of error not asserted by points of error or argument are considered waived on appeal." *Fort Bend Cnty. Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 395 (Tex. 1991); *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). We are thus prohibited from altering even an erroneous judgment in a civil case without a challenge to the error on appeal. *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 303 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Moreover, it is well-settled that Rule 38.3 of the Texas Rules of Appellate Procedure does not allow an appellant to include in a reply brief a new issue in response to a matter pointed out in the appellee's brief but not raised in the appellant's original brief. *See, e.g.*, *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *In re TCW Global Project Fund II, Ltd.*, 274 S.W.3d 166, 171 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied); *In re M.D.H.*, 139 S.W.3d 315, 318 (Tex. App.—Fort Worth 2004, pet. denied).

National Union argues in its appellate brief that Continental failed to challenge all of the independent bases for the trial court's ruling. Under Rule 38.3, Continental may address in its reply brief any matter in National Union's brief. *See*

Tex. R. App. P. 38.3. But this rule does not authorize Continental, without first obtaining leave of court, to challenge bases for the trial court's ruling for the first time in its reply brief. *See Marsh v. Livingston*, No. 14-09-00011-CV, 2010 WL 1609215, at *4 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, pet. denied) (mem. op.). We hold that Continental's failure to raise or brief the issue of limitations in its appellant's brief waives the issue. Because Continental has failed to attack an independent ground that supports the judgment, we affirm.[2]

/s/     Jeffrey V. Brown
          Justice

Panel consists of Justices Frost, Brown, and Christopher.

---

[2] Even if this court had allowed Continental to amend or supplement its original brief to challenge all of the independent bases for the trial court's ruling, this court still would have affirmed the trial court's judgment.

8