02-10-378-CV_REH









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00378-CV

 

 


 
 
 Paciwest, Inc.
 
 
  
 
 
 APPELLANT
 AND APPELLEE
 
 
 
 
  
 V.
  
 
 
 
 
 Warner Alan Properties, LLC, and Warner
 Alan/Westcliff, Ltd.
 
 
  
 
 
 APPELLEES
 AND APPELLANTS
 
 


 

 

----------

FROM THE 96th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1] ON
REHEARING

----------

After
reviewing the motion for limited rehearing filed by Warner Alan Properties, LLC
(Warner Alan Properties) and Warner Alan/Westcliff, Ltd. (Westcliff), and the
motion for rehearing filed by Paciwest, Inc., we deny both motions.  But to correct
and clarify the relief granted to Warner Alan Properties and Westcliff in our
May 31, 2012 opinion and judgment, we withdraw our opinion and judgment of that
date and substitute the following.

Introduction

Paciwest,
Inc. appeals from the trial court’s judgment in favor of Warner Alan Properties
and Westcliff on their breach of contract claim against Paciwest.  Westcliff is
Warner Alan’s successor-in-interest.  We will refer to Appellees generally as
Warner Alan except where the context requires more specificity.

In
eight issues, Paciwest complains about the trial court’s award of prejudgment
interest, its failure to set off certain amounts from Warner Alan’s damages,
its exclusion of evidence, and its failure to condition its award of Warner
Alan’s appellate attorney’s fees on Warner Alan’s successful appeal.  Warner
Alan also appeals, arguing in one issue that the trial court erred by not
awarding it the full amount of attorney’s fees stipulated by the parties.  We
hold that the trial court did not err by awarding prejudgment interest or by
not granting Paciwest a setoff.  We also hold that any error in excluding
evidence or failing to condition Warner Alan’s attorney’s fees was harmless.  But
we further hold that the trial court did err by not awarding Warner Alan the
stipulated attorney’s fees.  We therefore modify the trial court’s judgment to
award the stipulated attorney’s fees and affirm the judgment as modified.

Background

A
dispute arose between Paciwest and Warner Alan over a real estate contract
between them.  The contract called for Paciwest to sell an apartment complex to
Warner Alan, with closing fifteen days after the assumption by Warner Alan of
Paciwest’s note on the property.  The dispute between the parties arose before
closing when, among other things, Warner Alan indicated its intention to pay
off Paciwest’s note rather than assume it.  After Paciwest notified Warner Alan
that Paciwest considered the contract terminated by its own terms, Warner Alan
sued Paciwest on October 3, 2005, for specific performance and declaratory
judgment.  Among other relief, Warner Alan sought “the difference in interest
rates and interest payments caused by [Paciwest’s] failure to transfer the
Property on September 30, 2005,” lost profits, and increases in the cost of
financing improvement projects.

On
March 27, 2007, the trial court granted partial summary judgment for Warner
Alan, ordering that Warner Alan could pay off the note rather than assuming it,
that Paciwest breached the sales contract, and that Warner Alan was entitled to
specific performance.  The summary judgment did not determine the amount of
Warner Alan’s damages caused by Paciwest’s failure to convey the property or
the amount of Warner Alan’s reasonable and necessary attorney’s fees.

Paciwest
objected to Warner Alan’s damages expert on numerous grounds, and argued that
Warner Alan could not recover damages in addition to specific performance.[2] 
On June 26, 2007, the trial court signed an order finding that Warner Alan had
elected specific performance as its remedy and that “the law and relevant
contract provisions do not provide for the recovery of the additional damages”
sought by Warner Alan.

Thus,
the only issue not yet determined at that point was the amount of Warner Alan’s
reasonable and necessary attorney’s fees.  This issue was addressed by the
parties’ stipulation, which was filed with the trial court on August 16, 2007
(the 2007 Stipulation).  Paragraph one of the stipulation states that if
Paciwest was determined “after all appeals have been exhausted” to have
breached the contract, Warner Alan would be entitled to an award of reasonable
and necessary attorney’s fees of $277,700 in the trial court, $60,000 if appeal
was taken to the court of appeals, $10,000 for appeal to the Supreme Court of
Texas, and $20,000 if that court requested full briefing.

Paragraph
three of the stipulation further provides that if Paciwest appealed from a
finding of breach of contract and the finding was affirmed on appeal, “but this
case is remanded for further consideration of [Warner Alan’s] claims for
damages,” then the stipulation in paragraph one “shall remain effective,” and Warner
Alan “shall be entitled to an additional award of attorneys’ fees from
Paciwest.”  The additional attorney’s fees stipulated to in this paragraph includes
both the $46,723.50 in “reasonable and necessary” attorney’s fees that Warner
Alan had already incurred pursuing its damages claim, as well as the reasonable
and necessary attorney’s fees that Warner Alan ultimately incurred on remand, “in
an amount to be determined by the trier-of-fact or by further stipulation.”

With
all issues now disposed of, the trial court rendered a final judgment.  Both
sides then appealed.[3]

In that
appeal, this court affirmed the trial court’s judgment in part but reversed the
trial court’s determination that Warner Alan could not recover damages.[4] 
This court noted the rule that “in appropriate circumstances, the court may
order, in addition to specific performance, payment of expenses incurred by
plaintiffs as a result of a defendant’s late performance” and that “[t]his
compensation is not considered breach of contract damages, but rather
‘equalizes any losses occasioned by the delay by offsetting them with money
payments.’”[5]  Accordingly, we remanded
“that part of the case to the trial court for consideration of Paciwest’s other
objections to the testimony of [Warner Alan’s] damages expert and for further
proceedings as to those alleged damages consistent with [our] opinion.”[6]

On
remand, the trial court entered an order decreeing that “the only issues
remaining to be tried . . . are the amount of damages that were caused by
Paciwest’s delay in selling the Property and the amount of [Warner Alan’s]
reasonable and necessary attorneys’ fees.”  The court further ordered that
Paciwest was “precluded from offering any evidence or argument to the jury that
is not relevant to the issues of the amount of damages that were caused by
Paciwest’s delay in selling the Property and the amount of [Warner Alan’s]
reasonable and necessary attorneys’ fees.”

On
February 5, 2010, the parties filed a second stipulation of attorney’s fees (the
2010 Stipulation).  This stipulation stated that the 2007 Stipulation remained
in effect “and will be interpreted by the Court.”  The parties then stipulated
“that the following attorney’s fees have been or will be reasonably and
necessarily incurred by [Warner Alan] in connection with this matter,”
including the following amounts: $191,488.96 “[a]fter remand through January
31, 2010”; $80,000 “[f]rom February 1, 2010 through trial”; $30,000 for appeal
to the court of appeals; and $7,500 for petition for review to the Supreme
Court, plus an additional $20,000 if that court requested full briefing.

Jury
trial began on February 8, 2010.  The jury found damages for Warner Alan of
$442,814 in lost profits; $180,923.82 from the increase in financing costs;
$68,524 from the increase in the amount of prepayment penalty Warner Alan paid;
and $4,484 in loan application fees that Warner Alan had paid in connection
with the original closing date.  The jury further found that Paciwest received
$870,718 in profit from owning the apartments from the time of the original
closing date until the date of the court-ordered sale of the property to Warner
Alan.

On
August 5, 2010, the trial court signed a judgment that awarded to Warner Alan
the amounts found by the jury.  Additionally, the judgment awarded: (1) prejudgment
interest on the lost profits damages in the amount of $106,563.49; (2) $3,136.77
in prejudgment interest on the increased prepayment penalty damages; (3) $1,079.08
in prejudgment interest on the loan application fees; and (4) $23,751.28
prejudgment interest on attorney’s fees.

The
judgment also awarded Warner Alan $60,000 in attorney’s fees in the event
Paciwest appealed the judgment to this court, $7,500 in attorney’s fees in the
event of an appeal to the Supreme Court, and $20,000 if the Supreme Court
requested full briefing.  The award of appellate attorney’s fees was not
conditioned on Paciwest’s appeal being unsuccessful.  Both parties now appeal
from the August 5, 2010 judgment.

Paciwest’s
Appeal

We
first consider Paciwest’s second issue, under which it argues that the trial
court’s judgment is not supported by its findings of fact and conclusions of
law.  Paciwest makes several arguments under this issue.  Its primary argument
is that there is no finding of fact that directly or indirectly finds that the
award of damages reflected in the judgment places Paciwest and Warner Alan in
the positions they would have occupied had the contract been performed on September
30, 2005 and that no finding of fact or conclusion of law provides that the
award to Warner Alan is equitable or just considering all the relevant
circumstances.  Paciwest further contends that under rule 299 of the rules of
civil procedure, no such finding may be implied.

Rule
299 states,

When findings of fact are filed by the trial court they
shall form the basis of the judgment upon all grounds of recovery and of
defense embraced therein.  The judgment may not be supported upon appeal by a
presumed finding upon any ground of recovery or defense, no element of
which has been included in the findings of fact; but when one or more
elements thereof have been found by the trial court, omitted unrequested
elements, when supported by evidence, will be supplied by presumption in
support of the judgment.[7]

Paciwest
contends that without a finding of fact that the award of damages places the
parties as nearly as possible in the positions they would have occupied had the
contract been performed on September 30, 2005, that the balancing of the
equities requires the award to Warner Alan, or that such payment is equitable
and just under the circumstances, there exists no factual or legal basis for
the equitable award of damages to Warner Alan.  In its reply brief, Paciwest
further states that “no element of the ground of recovery for equitable relief
exists within the trial court’s findings of fact and conclusions of law.”

We
are unsure what “elements” Paciwest believes should have been found by the
trial court before it could award the relief ordered in its judgment.[8] 
Warner Alan had already successfully established its claim for breach of
contract, as affirmed by this court in Paciwest I.[9] 
All that remained to be determined by the trial court was whether Warner Alan
was entitled to additional equitable relief, and, if so, in what amount.  In
our prior opinion, we held that Warner Alan’s election to seek specific
performance did not prevent it from seeking compensation for expenses caused by
Paciwest’s delay.[10]  We noted that a trial
court may, “in appropriate circumstances,” order payment of expenses incurred
by the plaintiff because of the defendant’s late performance, and we stated
that such compensation “‘equalizes any losses occasioned by the delay by
offsetting them with money payments.’”[11]  We remanded for further
proceedings regarding any such losses that Warner Alan may have suffered because
of Paciwest’s delay.  Thus, on remand, the trial court was required to
determine whether “appropriate circumstances” existed to order payment of Warner
Alan’s expenses, and, if so, to determine what payments by Paciwest would equalize
Warner Alan’s losses.  If there were any other “elements” that Warner Alan
still needed to establish, Paciwest does not identify them.

Warner
Alan did, however, have to present evidence of the losses it suffered because
of Paciwest’s delay, and the trial court was required to consider all the
circumstances of the parties’ dealings in balancing the equities.[12] 
In its findings of fact and conclusions of law, the trial court noted that it
had conducted an evidentiary hearing at which “Paciwest offered evidence of
‘equitable adjustments’ it contended the [trial court] could make ‘in
appropriate circumstances.’”  The trial court found that Paciwest had caused
the delay in closing; that because of Paciwest’s delay, Warner Alan had
incurred lost profits, increased financing costs, increased prepayment penalty,
and loan application fees in the amounts found by the jury; and that Warner
Alan did not earn interest on the purchase money during the delay because it
was buying the property through third-party financing rather than with cash. 
The trial court then made a number of conclusions of law, including that “[t]he
facts of this case provide appropriate circumstances to require Paciwest to
compensate [Warner Alan] for the losses caused by Paciwest’s failure to timely
convey” the property.

Contrary
to Paciwest’s contentions, the trial court did make some findings in support of
its judgment, and Paciwest does not argue that there was no evidence to support
these findings.  Paciwest directs us to no case, and we have found none, holding
that to award the compensation ordered in this case, the trial court had to make
a finding containing the specific words that “the award of damages places the
parties as nearly as possible in the position they would have occupied had the
contract been performed,” that “the balancing of the equities requires the [award],”
or that “such payment is equitable and just under the circumstances.”  We
overrule this part of Paciwest’s second issue.

Paciwest
also argues that the trial court “analyzed the question . . . not as an
equitable proceeding, but rather as one involving ‘legal damages.’”  As an
example, it points to the trial court’s conclusions of law in determining whether
the parties were “entitled” to various awards or offsets.  Paciwest argues that
“‘[e]ntitlement’ however is not the material question” and that “[t]he actual
question is whether such an offset is equitable . . . and [is] necessary to
balance the equities.”  But from the context, it is clear that the trial court
did not use the word “entitlement” to indicate a legal right but instead merely
to indicate whether, under the circumstances, the award or offset should be
ordered.

As
further alleged proof that the trial court did not conduct the proceedings as
“equitable proceedings,” Paciwest points to the trial court’s finding that Warner
Alan did not have cash on hand to pay the purchase price and had to resort to
third-party financing.  Paciwest argues that this finding shows that the trial
court “analyze[d] the issue purely from the perspective of Warner Alan” and “failed
to take into account the position both parties would have been in had the contract
been performed on . . . September 30, 2005.”  We do not see how one finding by
the trial court—which Paciwest does not argue was incorrect—shows that the
trial court failed to properly analyze the issues before it on remand or failed
to properly “balance the equities.”  We overrule Paciwest’s second issue.

In
its third issue, Paciwest contends that the trial court’s failure to find a
reasonable rate of interest on the purchase price of the apartments or an
increase in the value of the apartments attributable to Paciwest’s efforts and
to set off those amounts from Warner Alan’s damages was an abuse of discretion
and reversible error.  In a claim for equitable relief, a trial court has broad
discretion in balancing competing equities.[13]  We will not disturb a
trial court’s ruling in such a matter unless the trial court acted without
reference to any guiding rules or principles—in other words, unless the trial
court’s ruling was arbitrary or unreasonable.[14]

We
first address the trial court’s failure to award Paciwest an offset for any
increase in the value of the property attributable to Paciwest’s efforts.  In a
letter to the parties, which the trial court adopted as its findings of fact
and conclusions of law, the trial court stated that it “found no credible
evidence that increase in value (if, indeed, there was one) was the result of
any action by [Paciwest].”  In its amended findings of fact and conclusions of
law, however, the trial court gave no basis for its decision not to award this
offset requested by Paciwest.  Regardless of the basis of the trial court’s
decision, though, Paciwest does not make any argument under this issue about
why the trial court’s decision was an abuse of discretion.  We therefore
overrule this part of Paciwest’s issue.[15]

Regarding
the trial court’s failure to offset a reasonable amount of interest on the
purchase price, Paciwest’s argument does not address the profits that it earned
while it retained ownership of the property in breach of the contract, profits
that the trial court allowed Paciwest to keep on equity grounds.  If Paciwest
truly wanted to be placed “in the position it would have been in pursuant to the
performance of that contract,” as Paciwest argues the trial court should have placed
the parties, then Paciwest could not have retained those profits.  And the
amount of those profits exceeded the amount that Warner Alan was awarded in the
judgment—meaning that if Warner Alan had not been awarded its attorney’s fees,
Paciwest would have ultimately profited from its breach of contract.[16]
 We cannot say that the trial court abused its discretion in its balancing of
the equities by not awarding Paciwest a setoff of the interest on the purchase
price it would have earned if it had not breached the contract.

Paciwest
contends in its reply brief that the trial court did not base its decision not
to award it the offset on the ground that Paciwest was allowed to keep the profits
it had earned while in breach of the contract.  In its findings of fact and
conclusions of law, with respect to allowing Paciwest to keep the profits, the
trial court stated, “Warner Alan/Westcliff is not entitled to recover the
amount of profit Paciwest earned from October 1, 2005 through August 26, 2009. 
Equity dictates that the Court not punish Paciwest for being a more frugal
manager of the property [than] Warner Alan/Westcliff would have been.”  Regarding
its decision not to award Paciwest an offset for the amount of interest it
could have earned on the purchase money, the trial court gave no basis for its
decision.  But even if the trial court’s conclusion was not a proper basis for
the trial court’s decision not to award an offset, we will affirm the trial
court’s judgment if it is otherwise correct.[17]  Because we have held
that the trial court’s balancing of the equities was not an abuse of
discretion, we overrule Paciwest’s third issue.

In
its first issue, Paciwest argues that the trial court’s February 5, 2010 ruling
excluding evidence was an abuse of discretion and reversible error.  In its
argument under this issue, Paciwest contends that the trial court prohibited it
from offering evidence of the value of the loss of the use of the purchase
money that Paciwest would have received had it not breached the contract. 
Paciwest argues that the trial court’s refusal to admit such evidence was an
abuse of discretion.  Even if the trial court refused to admit such evidence
and such refusal was an abuse of discretion, because we have held that Paciwest
was not harmed by the trial court’s decision not to award Paciwest an offset
for the amount of interest it could have earned on the purchase money, we
overrule this part of Paciwest’s issue.

Paciwest
also argues under its first issue that the trial court prohibited Paciwest from
presenting any evidence concerning the “circumstances surrounding the
transaction” and its breach of the contract, as well as evidence about the
increased appraisal value of the property, which it contends was attributable
to its efforts.  But Paciwest does not point out in its brief what specific evidence
the trial court should have considered but that Paciwest was prohibited from
offering or what matters this evidence related to, nor does Paciwest make any
argument about how it was harmed by the exclusion of this evidence.  Although
Paciwest references its statement of facts, we have reviewed its statement of
facts and cannot determine what specific evidence it refers to or what circumstances
the evidence relates to.[18]  We therefore overrule
this part of Paciwest’s issue as inadequately briefed, and, accordingly, we
overrule Paciwest’s first issue.

Paciwest
argues in its fourth issue that the trial court abused its discretion by awarding
Warner Alan prejudgment interest on lost profits starting from the date of
October 3, 2005.  It argues that prejudgment interest is recoverable “when an
ascertainable sum of money is determined to have been due and payable at a
definite date prior to judgment.”  Paciwest further contends that Warner Alan
did not request any findings about the dates that Warner Alan’s damages accrued,
and therefore “the trial court and this court can only speculate with regard to
the actual dates of accrual of such purported damages.”

A
trial court may award prejudgment interest under an enabling statute or under
its general principles of equity.[19]  The prejudgment award
in this case was based on the trial court’s equitable powers rather than under
any statute.  In Johnson & Higgins of Tex., Inc., the Supreme Court
held that “under the common law, prejudgment interest begins to accrue on the
earlier of (1) 180 days after the date a defendant receives written notice of a
claim or (2) the date suit is filed.”[20]  That court also held
that such “interest shall be computed as simple interest.”[21] 
Paciwest attempts to distinguish Johnson & Higgins by arguing that
in that case, “the award of [prejudgment] interest was upon amounts found to be
legal damages”[22] whereas in this case, the
trial court was “undertaking its equitable obligation to balance the equities
so as to place the parties in the position which they would have occupied had
the contract been performed pursuant to its terms.”  But the Supreme Court has
not limited its holding to compensation awarded as a legal rather than an
equitable remedy.  That court set out one method of calculating
prejudgment interest under the common law, and that is the method that the
trial court applied in this case.

Furthermore,
the Johnson & Higgins court stated that prejudgment interest serves
the objective of expediting settlement and trials as well as “the goal of
compensating plaintiffs, without overcompensating them or simultaneously
punishing defendants.”[23]  These objectives are
just as applicable when the plaintiff’s claim is equitable in nature and were
not frustrated by the trial court’s award in this case.  We therefore cannot
say that the trial court abused its discretion in its prejudgment interest
award.

Paciwest
relies on Byram v. Scott, a memorandum opinion from the Austin Court of
Appeals, to support its argument that the trial court should have calculated
the prejudgment interest on Warner Alan’s lost profits as they became “due and
payable” and that, because there were no findings about the dates of the
accrual of those lost profits, the trial court’s calculation of interest was an
abuse of discretion.  In Byram, Scott sued Byram for breach of an option
contract and sought specific performance.[24]  The trial court awarded
Scott specific performance and also awarded the amount that Scott had paid in
monthly rent from the time the sale should have closed until the time the sale actually
closed, plus prejudgment interest “at the applicable judgment interest rate, on
each monthly rental award.”[25]  But the trial court’s
calculation of prejudgment interest was not at issue; the case therefore does
not help Paciwest.  We overrule Paciwest’s fourth issue.

In
its fifth issue, Paciwest argues that lost profits are not the proper measure
of damages for lost use of the apartments and that the trial court therefore abused
its discretion by awarding Warner Alan compensation for lost profits.  Paciwest
argues that the ordinary method for calculating damages for a temporary loss of
use of property is the rental value of the property and that, if the property
is not rentable, “the owner may resort to proving the actual worth of the use.“
 Paciwest contends that Warner Alan produced no evidence concerning either the
rental value of the property or its not being rentable.  In response, Warner
Alan asserts that Paciwest never objected to the jury charge on the ground that
lost profits were not the correct measure of damages and that it did not submit
a jury question on rental value.

Question
number one of the jury charge asked the jury to determine “[w]hat sum of money,
if any, if paid now in cash, would fairly and reasonably compensate Warner
Alan/Westcliff for its damages, if any, that resulted from the delay in closing
from September 30, 2005, to August 27, 2009[.]”  The question then set out four
categories of damages and asked the jury to determine the amount of Warner Alan’s
damages, if any, in each category.  Part 1(a) asked the jury to determine “[t]he
lost profits Warner Alan/Westcliff would have received from owning [the apartments]
from October 1, 2005, through August 26, 2009.”  Other subparts of question one
asked the jury to determine the increase in financing costs to Warner Alan; the
increase in the amount of prepayment penalty that Warner Alan paid in
purchasing the apartments in 2009 instead of in 2005; and the loan application
fees that Warner Alan had paid in connection with the September 2005 closing
that were not reimbursed.

In
its objections at the charge conference, Paciwest objected to question number
one, but not on the ground that lost profits were not a proper measure of
damages.  Paciwest objected to that question as follows:

Defendant believes that Question Number 1 is contrary to
the broad-form submission required by the Texas Supreme Court.  We also believe
that Question Number 1 unfairly allows the plaintiff to essentially have four
different bites at the same apple by requiring the jury to go through and
separately pull out each—each element of damage.  We believe that the appropriate
question to the jury would be the question that was submitted as Defendant’s
Proposed Jury Instruction Number 1 and that—[w]e believe that that proposed
question is the question that should be in the charge.

Paciwest’s
proposed damages question asked broadly, “What is the amount of damages, if
any, incurred by Warner Alan as a result of the delay in the closing of the
sale of the Westcliff Manor Apartments from September 30, 2005 through August
26, 2009?”

To
preserve error in the jury charge, a party must make the trial court aware of
the complaint and obtain a ruling.[26]  Paciwest did not take
any steps to make the trial court aware of its complaint that lost profits were
not the proper measure of damages.  Accordingly, Paciwest did not preserve this
complaint for appellate review.  We therefore overrule Paciwest’s fifth issue.

In
Paciwest’s sixth issue, it argues that the trial court abused its discretion by
awarding Warner Alan damages for increased financing costs and prepayment
penalties when there was no evidence or insufficient evidence that Paciwest caused
such damages.  In Paciwest’s argument under this issue, it contends that Warner
Alan had the option to assume Paciwest’s note and that if it had done so, it
would not have suffered any additional costs concerning the prepayment penalty
or increased financing.  Paciwest contends that the additional costs incurred
by Warner Alan were caused by its own choice to seek third-party financing and not
by any delay in the closing.  Paciwest argues that there is thus no evidence or
insufficient evidence to support the findings by the jury with respect to those
categories of damages.  Paciwest cites no authority in support of its argument
under this issue.[27]

Although
Warner Alan had the option of assuming the note under the original terms of the
sales contract, it was not required to do so.  We previously held that the
terms of the contract allowed Warner Alan to obtain third-party financing to
pay off the note rather than assuming the note.[28]
 But even though Warner Alan had a right under the contract to obtain
third-party financing, Paciwest refused to honor the contract on those terms
and refused to close—in breach of the parties’ agreement.  The increased
financing costs and prepayment penalties were therefore caused by Paciwest’s
breach, and Warner Alan was entitled to be compensated for the expenses it
incurred because of the delay caused by Paciwest’s breach.[29]

In
its reply brief, Paciwest argues that Warner Alan did not submit any evidence
from which the jury could have calculated an increase in financing terms, and,
regarding the prepayment penalty, that Warner Alan produced no evidence that
the lender had calculated a payoff amount.  Paciwest did not raise these
arguments in its original appellant’s brief, and we therefore decline to
consider them.[30]  We overrule Paciwest’s
sixth issue.

In
its seventh issue, Paciwest argues that the trial court abused its discretion
by awarding prejudgment interest to Warner Alan on a portion of its attorney’s
fees because a party is not entitled to prejudgment interest on attorney’s
fees.[31]  In response, Warner
Alan argues that the trial court awarded prejudgment interest only on the
$347,000 in attorney’s fees that became due and payable per the parties’
stipulations upon Paciwest’s unsuccessful prior appeal and that there is no
abuse of discretion “in awarding equitable prejudgment interest on a
contractual obligation once that obligation becomes payable.”  Warner Alan
further argues that Paciwest waived this complaint because it never raised it
in the trial court.  Paciwest counters that it preserved this issue in both its
motion for new trial and its motion for entry of judgment.

Paciwest
has not directed this court to any place in the record where it complained to
the trial court that Warner Alan should not have been awarded prejudgment
interest on its attorney’s fees.  Paciwest filed a motion to modify the
judgment in which it objected that prejudgment interest should not have been
awarded generally because “there exists no evidence of the amounts of principal
or the dates of commencement from which such interest could be calculated.”  This
objection does nothing to make the trial court aware of Paciwest’s objection
that prejudgment interest may not be awarded on attorney’s fees.

Paciwest
also objected in that motion that the trial court “erred in awarding attorney[’s]
fees to Plaintiffs in that it misapplied the stipulation of the parties and
made an excessive award thereof.”  But that complaint did not give any
indication that Paciwest was objecting to the award of prejudgment interest
on the attorney’s fees.  Given Paciwest’s objection in its motion for judgment
that any award to Warner Alan of attorney’s fees for its cross-appeal should be
limited to the fees provided in the 2007 Stipulation, Paciwest’s later objection
that the trial court’s award of attorney’s fees was “excessive” was not
sufficient to make the trial court aware that Paciwest’s complaint related to
prejudgment interest on those fees.

In
Paciwest’s motion for new trial, it argued that the trial court “erred in
awarding prejudgment interest to [Warner Alan] in that there was factually
insufficient evidence concerning the amount of principal and the commencement
dates of the calculation of such interest,” but it did not argue that the trial
court erred by awarding prejudgment interest on attorney’s fees.  Because
Paciwest did not object in the trial court about the award of prejudgment
interest on Warner Alan’s attorney’s fees, it did not preserve this complaint
for our review.[32]

In
its reply brief, Paciwest argues that the trial court’s award of prejudgment
interest on the attorney’s fees violated the stipulation between the parties
regarding attorney’s fees.  But this argument is not the same argument raised by
Paciwest in its original appellant’s brief, and we therefore decline to
consider it.[33]  We overrule Paciwest’s
seventh issue.

In
its eighth and final issue, Paciwest argues that the trial court’s failure to
condition its award of Warner Alan’s attorney’s fees upon Warner Alan’s success
on appeal was an abuse of discretion.  We agree that a trial court must
condition an award of appellate attorney’s fees to a party on that party’s
success on appeal[34] and that the trial court
should have done so in this case.  But because we have overruled all of
Paciwest’s other issues, the error is nonreversible error.[35] 
We overrule Paciwest’s eighth issue.

Warner
Alan’s Appeal

In the
sole issue in its appeal, Warner Alan argues that the trial court erred by
failing to award all of its stipulated attorney’s fees.  Warner Alan asks this
court to modify the judgment to award it (1) $110,641.36 for fees incurred in
its successful cross-appeal in Paciwest I; (2) $131,001.62 for fees it
incurred in the trial court between the time of the trial court’s grant of
summary judgment in 2007 and this court’s decision in Paciwest I (including
$38,607.21 for the negotiation of a gas lease on the property); and (3) $20,000
for fees it incurred in post-trial proceedings.  Warner Alan contends that the
parties stipulated that such fees were reasonable and necessary and that the
trial court’s failure to award them was therefore error.

The
2007 Stipulation includes the following provisions:

1.       In the event [Paciwest] is
determined, after all appeals have been exhausted, to have breached the
contract the subject of [Warner Alan’s] claims and that either [Warner Alan
Properties or Westcliff] is entitled to some relief, [Warner Alan] will be
entitled to an award from [Paciwest] of reasonable and necessary attorneys’
fees . . . as follows: (i) $277,000 in the trial court, (ii) $60,000 if appeal
is taken to the Court of Appeals, and (iii) $10,000 if a petition for review is
filed with the Supreme Court of Texas and an additional $20,000 if full briefing
is requested by the Supreme Court of Texas; and such additional fees, if any,
as called for under Paragraph 3.

. . . .

3.       If the Court’s finding that
[Paciwest] breached the contract is affirmed on appeal, but this case is
remanded for further consideration of [Warner Alan’s] claims for damages, the
stipulation in Paragraph No. 1 shall remain effective, and, if [Warner Alan]
obtain[s] an award of damages on remand, after all appeals have been exhausted,
[Warner Alan] shall be entitled to an additional award of attorneys’ fees . . .
as follows: (i) $46,723.50, representing the reasonable and necessary
attorneys’ fees [Warner Alan] already ha[s] incurred related to their claims
for damages and (ii) the reasonable and necessary attorneys’ fees [Warner Alan]
incur[s] on remand in an amount to be determined by the trier-of-fact or by
further stipulation.

The
2010 Stipulation includes the following provisions:

1.       The parties[’] prior
Stipulation on Attorneys’ Fees remains in effect and will be interpreted by the
Court.

2.       The parties further stipulate
that the following attorneys’ fees have been or will be reasonably and
necessarily incurred by [Warner Alan] in connection with this matter.

a.   Cross-appeal:                                     $110,641.36

b.   Postjudgment:                                     
$92,394.30

c.   Gas
Lease:                                           $38,607.32

d.   After Remand
through

January 31, 2010:                                     $191,488.96

e.   From February 1,
2010

through trial:                                              
$80,000.00

f.    Post-Trial
Proceedings:                        $20,000.00

g.   Appeal
to the Court of Appeals:   $30,000.00

h.   Petition for
Review to the

Supreme Court of Texas:                               $7,500.00

i.    Full Briefing
requested by the

Supreme Court of Texas:                            
$20,000.00

Warner
Alan’s complaint on appeal is that the trial court erroneously failed to award
it the fees stipulated by the parties in 2a, 2b, 2c, and 2f.

The
trial court’s judgment noted that the parties had stipulated to attorney’s
fees, and it ordered that Warner Alan “have and recover of and from Paciwest
reasonable and necessary attorneys’ fees in the amount of $347,000 pursuant to
the parties’ Stipulation on Attorneys’ Fees filed on August 16, 2007, plus
prejudgment interest in the amount of $23,751.28.”  The trial court further
ordered that Paciwest pay (1) Warner Alan’s “reasonable and necessary
attorneys’ fees in the amount of $318,212.46 pursuant to the parties’
stipulation on Attorneys’ Fees filed on August 16, 2007 and Stipulation on
Attorneys’ Fees dated February 5, 2010,” (2) “plus an additional $60,000 in
attorneys’ fees in the event Paciwest pursues an appeal to the Court of Appeals”;
(3) “an additional $7,500 in attorneys’ fees in the event Paciwest files a
petition for review to the Texas Supreme Court”; and (4) “an additional $20,000
in attorneys’ fees in the event the Texas Supreme Court requests full
briefing.”

A
stipulation is “an agreement, admission, or concession made in a judicial
proceeding by the parties or their attorneys” respecting some matter incident
to that proceeding.[36]  Some courts of
appeals—including this one—have held that a trial court has discretion in
modifying or setting aside a stipulation for good cause.[37]  And some courts of
appeals—including this one—have held that stipulations are binding on the
parties, the trial court, and reviewing courts.[38]  In this case, however, it does
not appear that the trial court agreed with Warner Alan’s interpretation of the
stipulations and then exercised its discretion to ignore or set aside the
stipulations.  Rather, it appears that the trial court agreed with Paciwest
that the stipulations simply did not provide for the attorney’s fees that Warner
Alan now seeks on appeal.

The
trial court was faced with construing two documents evidencing the parties’
agreements, neither of which was drafted as clearly as it could have been regarding
the parties’ intent.  But upon review of both the 2007 Stipulation and the 2010
Stipulation,[39] we believe that the parties
intended the interpretation urged by Warner Alan.

Paragraph
one of the 2007 Stipulation is vague and unclear about which fees the parties were
intending to stipulate to in that paragraph, but only when read in isolation
from the remainder of the document.  When paragraph one is read in conjunction
with paragraph three, it becomes clear that paragraph one does not include the
attorney’s fees incurred by Warner Alan in pursuing its damages claim.  If
paragraph one had been intended to cover the fees relating to the damages
claim, then paragraph three—which expressly discusses fees incurred in relation
to the damages claim—would have no purpose.  But we must construe the
stipulation so that no part is meaningless.[40]  Therefore, paragraph
one covers the claims other than the damages claim but does not apply to the
damages claim.

Paragraph
three covers the damages claim, and that paragraph clearly states that if the
claim for damages were remanded (which it was) and if Warner Alan were to be awarded
damages on remand (which it was), then after all appeals were exhausted, Warner
Alan would be entitled to two additional categories of attorney’s fees.  First,
Warner Alan would be entitled to an award covering the attorney’s fees that it
had already incurred up to that point in pursuing the damages claim.  The
parties stipulated in paragraph three to the amount of those already-incurred
fees:  $46,723.50.  Second, the parties agreed that Warner Alan would also be
entitled to an award covering the amount that it subsequently incurred on
remand, in an amount to be determined at a later time, either by the parties
through stipulation or by a trier of fact.  That amount was determined by the
2010 Stipulation.

Under
the 2007 Stipulation, then, Warner Alan was entitled to an award of attorney’s
fees in the amount of $46,723.50, as expressly agreed in the 2007 Stipulation,
for the attorney’s fees that Warner Alan had incurred as of August 16, 2007, in
pursuing the damages claim.  Under the same stipulation, Warner Alan was also entitled
to an award of the attorney’s fees that it had incurred after that date. 
Rather than have the amount of those reasonable and necessary attorney’s fees
determined by the fact finder, the parties chose to stipulate to the amount of
the fees in the 2010 Stipulation.  The amounts listed in the 2010 Stipulation
were the amounts “determined by . . . further stipulation” as called for by the
2007 Stipulation.

Paragraph
three of the 2007 Stipulation, then, included the amounts stipulated in parts
2b, 2c, and 2f of the 2010 Stipulation, fees incurred after remand of the
damages claim but before this appeal was taken.  The trial court’s decision to
not award those fees likely stemmed from that court’s interpretation of
paragraph three of the 2007 Stipulation combined with the fact that the 2010 Stipulation
did not expressly state that Warner Alan was entitled to the fees listed
therein.  The trial court appears to have read the 2007 Stipulation to apply
only to attorney’s fees that Warner Alan incurred specifically in pursuing its
damages claim on remand, up through the time of the trial court’s judgment
awarding the damages, a reading which would result in the award ultimately made
by the trial court.

But
the 2007 Stipulation is not so limited, as explained below.  Paragraph three
states that if Warner Alan’s claim for damages were to be remanded and Warner
Alan prevailed on that claim, Warner Alan would be entitled to “the reasonable
and necessary attorney[’s] fees [Warner Alan] incur[s] on remand.”  It does not
limit Warner Alan’s entitlement to only the attorney’s fees it incurred in pursuing
the damages claim on remand.  It does not limit Warner Alan’s entitlement to
only the attorney’s fees it incurred in pursuing its claim up until the time of
the trial court’s judgment on that claim.  Paragraph three states broadly that
upon a remand of Warner Alan’s damages claim, if Warner Alan were successful,
Warner Alan would be entitled to the fees it incurred on remand.  The
reasonable construction of this language is that it encompasses all fees Warner
Alan incurred in the case after the case was remanded, including any
postjudgment motions or proceedings.  The claim was remanded, and Warner Alan
did obtain an award on its claim, triggering application of the stipulation in
paragraph three.  The attorney’s fees listed in categories 2b, 2c, and 2f were
all fees that Warner Alan incurred after its claim was remanded to the trial
court, and in paragraph three of the 2007 Stipulation, the parties agreed that
Warner Alan was entitled to those fees.  Accordingly, the trial court’s
construction of the stipulations as not providing for these fees was erroneous.

Furthermore,
even if we were to hold that a stipulation to attorney’s fees must expressly state
that the party is entitled to the attorney’s fees or words to that effect (as
Paciwest argues), the 2010 Stipulation did not need to include such a statement
because, as explained, the 2007 Stipulation does state that Warner Alan was
entitled to the fees provided for in the 2010 Stipulation.  Thus, Warner Alan’s
entitlement to the fees listed in 2b, 2c, and 2f of the 2010 Stipulation is
established by the 2007 Stipulation.

Warner
Alan also argues that it was entitled to the amount stipulated in part 2a of
the 2010 Stipulation:  the $110,641.36 Warner Alan incurred during its prior
appeal of its damages claim.  But paragraph three of the 2007 Stipulation only
stipulates to Warner Alan’s entitlement to the $46,723.50 in fees it had
incurred up to that point and to the fees that Warner Alan “incur[s] on
remand.” [Emphasis Added.]  The $110,641.36 incurred in its appeal of its
damages claim was not incurred “on remand” because those fees were incurred prior
to remand, when the case was on appeal to this court.  Thus, paragraph three of
the 2007 Stipulation does not show any agreement between the parties that
Warner Alan was entitled to those fees.

The
sales contract, however, does provide for the recovery of attorney’s fees.[41] 
The contract states,

In the event it becomes necessary for either party hereto
to file suit to enforce this Agreement or any provision contained herein, the
party prevailing in such suit shall be entitled to recover, in addition to all
other remedies or damages as provided herein, reasonable attorneys’ fees
incurred in such suit.

These
fees were incurred in a suit brought by Warner Alan to enforce the sales
agreement, and Warner Alan prevailed in the suit.  Therefore, under the plain
language of the sales contract, Warner Alan is entitled to its attorney’s fees
incurred in the suit.  Through the 2010 Stipulation, Warner Alan established
the amount and the reasonableness of the fees it incurred.  Accordingly, Warner
Alan is entitled to an award of the fees.

Paciwest
argues that the amount of appellate attorney’s fees set out in paragraph one of
the 2007 Stipulation was intended by the parties to include all of the attorney’s
fees incurred by Warner Alan in the prior appeal, both for Paciwest’s appeal
and for Warner Alan’s cross-appeal.  In support, Paciwest points to the
language in paragraph one that states that Warner Alan would be entitled to the
amount in paragraph one after “all appeals.”  Paciwest then points to the
language in paragraph three that discusses the fees to which Warner Alan would
be entitled if the damages claim were remanded.  Paciwest says that Warner
Alan’s damages claim would not be remanded unless it were first appealed, and
therefore the words “all appeals” in paragraph one must include the appeal of
Warner Alan’s damages claim.  The trial court appeared to agree with Paciwest.

But
as we have held, under our reading of the 2007 Stipulation, paragraph one of
the 2007 Stipulation does not include fees incurred by Warner Alan with respect
to its damages claim.  Paragraph one applies only to Paciwest’s appeal of the
part of the trial court’s judgment that Paciwest had breached the contract. 
Paragraph three applies to Warner Alan’s damages claim.  The 2007 Stipulation is
silent regarding the fees that Warner Alan would incur in its appeal of that
claim.  Because the 2007 Stipulation does not address those fees, if Warner
Alan wanted to recover them as provided in the sales contract, it had to
establish their amount and reasonableness.  As we have stated, it did so
through the 2010 Stipulation.  Because the parties contractually agreed that
the prevailing party in a suit to enforce the sales agreement was entitled to
recover its attorney’s fees, and because Warner Alan established by stipulation
the amount and the reasonableness of its attorney’s fees, the trial court
should have awarded them.  We sustain Warner Alan’s sole issue.

Warner
Alan points out in a footnote of its brief that although the 2010 stipulation
provided for $30,000 in appellate attorney’s fees on appeal to this court, the
trial court awarded it $60,000.  Warner Alan states in the footnote that this
court should therefore modify the judgment not only to award it the full amount
of stipulated fees, but also to delete the extra $30,000 awarded but not
stipulated.  We agree, and we modify the judgment accordingly.

Conclusion

Having
overruled all of Paciwest’s issues, we affirm the trial court’s judgment
against it.  Having sustained Warner Alan’s sole issue, we modify the judgment
to award Warner Alan an additional $231,642.98 in attorney’s fees and affirm
the judgment as modified.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  August 16, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Paciwest,
Inc. v. Warner Alan Props., LLC, 266 S.W.3d 559, 566 (Tex. App.—Fort Worth
2008, pet. denied) (“Paciwest I”).





[3]Id.





[4]Id.
at 575.





[5]Id.





[6]Id.





[7]Tex. R. Civ. P. 299 (emphasis added).





[8]See
Black’s Law Dictionary 597 (9th ed. 2009) (defining “element” as “[a]
constituent part of a claim that must be proved for the claim to succeed”).





[9]Paciwest I, 266 S.W.3d at 570–71.





[10]Id.





[11]Id. (quoting Heritage
Housing Corp. v. Ferguson, 674 S.W.2d 363, 365–66 (Tex. App.—Dallas 1984,
writ ref’d n.r.e.)).





[12]See
Flores v. Flores, 116 S.W.3d 870, 876 (Tex. App.—Corpus Christi 2003, no
pet.) (stating that “[e]quity seeks to . . . strike a balance by reviewing the
entire situation”).





[13]Edwards
v. Mid-Continent Office Distribs., L.P., 252 S.W.3d 833, 836 (Tex. App.—Dallas
2008, pet. denied).





[14]Low
v. Henry, 221 S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings, 134
S.W.3d 835, 838–39 (Tex. 2004).





[15]See
Tex. R. App. P. 38.1(i).





[16]See
Alamo Auto. Co. v. Schmidt, 211 S.W. 804, 805 (Tex. Civ. App.—San Antonio
1919, writ ref’d) (noting that it would be unjust and inequitable to reward the
party who had breached the contract); see also Flores, 116 S.W.3d
at 876 (stating that “[e]quity seeks to do justice, to strike a balance by
reviewing the entire situation” and that “[e]quity acts in accordance with
conscience and good faith and promotes fair dealing”).





[17]See
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002) (“If the reviewing court
determines a conclusion of law is erroneous, but the trial court rendered the
proper judgment, the erroneous conclusion of law does not require reversal.”); Bellaire
Kirkpatrick Joint Venture v. Loots, 826 S.W.2d 205, 210 (Tex. App.—Fort
Worth 1992, writ denied) (same).





[18]See
Tex. R. App. P. 38.1(i); Allegiance Hillview, L.P. v. Range Tex. Prod.,
LLC, 347 S.W.3d 855, 873 (Tex. App.—Fort Worth 2011, no pet.) (“An
inadequately briefed issue may be waived on appeal.”); see also Fredonia
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284–85 (Tex. 1994)
(discussing the “long-standing rule” that a point may be waived due to
inadequate briefing).





[19]Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex. 1998).





[20]Id. at 531; see also Smith v.
Huston, 251 S.W.3d 808, 827 (Tex. App.—Fort Worth 2008, pet. denied).





[21]Johnson & Higgins, 962 S.W.2d at
532.





[22]See
Am. Med. Electronics, Inc. v. Korn, 819 S.W.2d 573, 577 n.3 (Tex. App.—Dallas
1991, writ denied) (defining the term “damages” as “any invasions of the
plaintiff’s legally protected interest”).





[23]Johnson
& Higgins, 962 S.W.2d at 532; see also Citizens
Nat’l Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459, 486 (Tex. App.—Fort
Worth 2004, no pet.) (op. on reh’g) (noting that an
“award of prejudgment interest advances two ends: 1) achieving full
compensation to plaintiffs; and 2) expediting both settlements and trials”).





[24]Byram v. Scott, No. 03-07-00741-CV,
2009 WL 1896076, at *2 (Tex. App.—Austin July 1, 2009, pet. denied)
(mem. op.).





[25]Id.





[26]State Dep’t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh’g); see Tex.
R. App. P. 33.1(a); Tex. R. Civ. P. 274 (requiring a party objecting to a
charge to point out distinctly the objectionable matter and the grounds of the
objection).





[27]See
Tex. R. App. P. 38.1(i); Allegiance Hillview, 347 S.W.3d at 873.





[28]Paciwest
I, 266 S.W.3d at 569–70.





[29]See Heritage Housing, 674 S.W.2d at 365–66.





[30]See In re M.D.H., 139 S.W.3d 315, 318
(Tex. App.—Fort Worth 2004, pet. denied) (op. on reh’g) (“A reply brief may not be used to raise new complaints.”).





[31]See Carbona v. CH Med., Inc., 266
S.W.3d 675, 688 (Tex. App.—Dallas
2008, no pet.) (noting that “prejudgment interest cannot be recovered on
attorney’s fees”).





[32]See Morton v. Hung Nguyen, No.
14-11-00126-CV, 2012 WL 1743465, at *14 (Tex.
App.—Houston [14th Dist.] May 17, 2012, no. pet.)
(op. on reh’g) (“A complaint regarding the award of
pre-judgment interest must be preserved in the trial court by a motion to amend
or correct the judgment or by a motion for new trial.”); McLemore v.
Johnston, 585 S.W.2d 347, 349 (Tex. Civ. App.—Dallas 1979, no writ)
(holding that Johnston had waived its complaint about
the trial court’s award of prejudgment interest by not
bringing the complaint to the attention of the trial
court); cf. Reliance Ins. Co. v. Dahlstrom Corp., 568 S.W.2d 733, 737 (Tex. Civ. App.—Eastland 1978, writ ref’d
n.r.e.) (noting that after judgment, Reliance had
filed a motion to correct the judgment, contending, among other things, that Dahlstrom was not entitled to prejudgment interest and that the trial court
had then reduced the amount of the interest).





[33]See M.D.H., 139 S.W.3d at 318.





[34]Arena
v. Arena, 822 S.W.2d 645, 651 (Tex. App.—Fort Worth 1991, no writ).





[35]See
id. (“[I]f the party awarded the [unconditional appellate] attorney’s fees
is completely successful on appeal, then the error of the trial court will be
deemed nonreversible error.”).





[36]Shepherd
v. Ledford, 962 S.W.2d 28, 33 (Tex. 1998).





[37]See
Allen v. Allen, 704 S.W.2d 600, 605 (Tex. App.—Fort Worth 1986, no writ) (“Setting
aside a stipulation ordinarily is within the discretion of the trial court. . . .
 Good cause must be shown in order to set aside a stipulation.”); see also
Porter v. Holt, 73 Tex. 447, 449, 11 S.W. 494, 494 (1889) (discussing
“[a]greements of counsel, made during the progress of a cause” and holding that
“in this court such agreements have never been treated as binding contracts, to
be absolutely enforced, but as mere stipulations, which may be set aside
in the sound discretion of the court, when such action may be taken without
prejudice to either party”) (emphasis added). 





[38]See
Garner v. Long, 106 S.W.3d 260, 269 (Tex. App.—Fort Worth 2003, no pet.); Morgan
v. Ebby Halliday Real Estate, Inc., 873 S.W.2d 385, 390 (Tex. App.—Fort
Worth 1993, no writ); see also Penick v. Penick, 750 S.W.2d 247, 248–49
(Tex. App.—Houston [14th Dist.] 1988) (noting the split between courts of
appeals holding that stipulations may be modified or set aside and those
holding that stipulations are binding upon trial courts), rev’d on other
grounds by 783 S.W.2d 194 (Tex. 1988).  Courts have consistently held that when
a case is tried on agreed stipulated facts under civil procedure rule 263, the
agreed stipulations are binding on the trial court and reviewing court.  See
Tex. R. Civ. P. 263; State Farm Lloyds v. Kessler, 932 S.W.2d 732, 735
(Tex. App.—Fort Worth 1996, writ denied).  The disagreement among the courts of
appeals seems to arise only in cases such as this one where some but not all of
the relevant facts were stipulated by the parties, but our research is not
conclusive on that point.  We note only that not all courts of appeals are in
agreement about a trial court’s discretion regarding stipulations in certain
contexts.





[39]See
Heil Co. v. Polar Corp., 191 S.W.3d 805, 809–10 (Tex. App.—Fort Worth 2006,
pet. denied) (applying de novo review to a trial court’s interpretation of an
unambiguous contract); First Nat’l Bank in Dallas v. Kinabrew, 589
S.W.2d 137, 142 (Tex. Civ. App.—Tyler 1979, writ ref’d n.r.e.) (applying rules
for interpreting contracts to the interpretation of stipulations because “a
stipulation constitutes a contract”); Fid. & Cas. Co. of N.Y. v. Horton
& Horton Custom Works, Inc., 462 S.W.2d 613, 618 (Tex. Civ. App.—Fort
Worth 1971, writ ref’d n.r.e.) (applying rules for interpreting contracts to
the interpretation of stipulations).





[40]See
J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 235 (Tex. 2003) (“Contracts
are to be read as a whole, and an interpretation that gives effect to every
part of the agreement is favored so that no provision is rendered meaningless.”).





[41]See
Wayne v. A.V.A. Vending, Inc., 52 S.W.3d 412, 417–18 (Tex. App.—Corpus
Christi 2001, pet. denied) (noting that parties are free to contractually agree
to a more liberal standard for recovery of attorney’s fees than as provided in
civil practice and remedies code chapter 38); One Call Sys., Inc. v. Houston
Lighting & Power, 936 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.]
1996, writ denied) (same).